AREA29



# LICENSE TERMS AND CONDITIONS

1. GRANT OF LICENSE

Licensor hereby grants to Licensee a temporary, revocable license (the "License") and nonexclusive right to use and occupy the Premises commencing on License Commencement Date and continuing until the License Termination Date, defined below, subject to the terms and conditions contained herein.

2. PERMITTED USES

This License shall be limited to Licensee's use and occupancy of the VENUE as an entertainer/dancer and Licensee shall be entitled to perform entertainment services at the VENUE. Licensee shall not use or occupy the VENUE or act or fail to act in any way which would constitute an event of default by Licensee under this Agreement.

The Licensee agrees to comply with any House Rules which Licensor puts into effect from time to time at the VENUE, which includes, without limitation that Licensee shall:

1. Perform in bikini on stages and in sections throughout the venue as directed by management.
2. Promote her services at the VENUE but in connection with such promotion may not use the name, logo, trademarks, service marks without prior written authorization of the Licensor.
3. Not violate any federal, state and local laws or governmental regulations.
4. Maintain accurate records of income generated using facilities and be solely responsible for all taxes, fees, etc. incurred by her in the operation of her business.
5. Licensee is responsible at her sole cost and expense for all necessary licenses, permits, certificates, etc. to conduct her business.
6. At all times, Licensee shall maintain a professional appearance and conduct herself professionally and consistent with industry standards and the standards and image of the VENUE
7. Section hopping will NO LONGER be permitted, if you leave the section without permission from management, you will no longer be on the bag.
8. Disruptive behavior when asked to leave a section, including arguing and challenging management are grounds for immediate termination.
9. All fees must be paid before entering the VENUE, if you sneak in and work you will be fined $500 and still be required to pay the maximum fee before receiving any proceeds from a bag. ALL fees are to be paid upfront unless APPROVED by MANAGEMENT.
10. No more than 4-5 girls will be permitted in a section, no exceptions. Managers may issue wristbands to identify the entertainers selected by the customers.
11. Dancers are not permitted to tell other dancers that they are not wanted in a section; this is at the sole discretion of the customer that paid for the sections and/or ones, not his friends or guests.
12. Threats of violence will not be tolerated! If you threaten any dancer, staff member or customer you will be fined or immediately terminated.
13. FIGHTING = $500 fine or termination
14. ARGUMENT = $50 fine (with another Dancer), $100 fine (with a customer, staff, or DJ), $250 fine or termination (with management)
15. NO USING OR SELLING DRUGS
16. NO PROSTITUTION
17. Cover stages until relief comes.
18. DJ picks and requests ARE ONLY PLAYED if they fit the time and format.
19. Understand tip out requirements, once paid all tipout is strictly/absolutely NONREFUNDABLE
20. No smoking is permitted inside the building.

ENT





AREA29



21. Check in time starts at the front door and when you are dressed. As soon as you are ready check in with the door and with the DJ.
22. DO NOT promote for or advertise another VENUE within these walls.
23. Full Bottoms: Your crack must be covered. Bikini type of bottoms thatare on/across your butt, not in your butt. No G-Strings or thongs. Also, tape or pasties are required to cover your nipples at all times.
24. Interviews are held from 10:00pm – 12:00am only.
25. Your licensing is at the sole discretion of the VENUE.
26. Appearance must be approved upon arrival, including but not limited to: Shoes, outfits, hair, makeup, hygiene, weight and nails.
27. You are NOT permitted to bring beverages of any type or food into the building.
28. Underage drinking will not be tolerated!
29. APPS REQUIRED ON ALL ENTERTAINERS (Paper or online)
30. No moving on dance list.
31. If you leave a section without permission from management, you will forfeit any and all tips or gratuity from that section.
32. Do NOT enter a section if money is already on the floor, no more than four (4) dancers per section without approval.
33. Be respectful to all STAFF.
34. Do not argue or touch a customer, immediately notify management in the event of a disagreement or altercation.
35. Leave your personal relationships outside the VENUE, your significant other is not permitted to visit with you at the VENUE. Significant others, including but not limited to, boyfriends, spouse, Pimps, managers, lovers (male or female), child's father, etc. are not permitted to associate with you or enter the building during your shift.

3. DURATION OF LICENSE; TERMINATION OF LICENSE.
This Agreement shall be for the period commencing on the License Commencement Date and shall terminate on the day preceding the first anniversary of the License Commencement Date. The License shall be automatically extended for successive periods equal to the current term. Notwithstanding the foregoing, at any time after the first year of the License term, this License may be terminated (a) within thirty (30) days after the receipt of written termination notice from the Licensor to Licensee, (b) the last day of the month that is ninety (90) days after the receipt of a written termination notice from Licensee to Licensor, or (c) such sooner date in accordance with Paragraph 11 hereof, any of such dates which shall be the "License Termination Date." Upon the License Termination Date, Licensee shall have no further right to use and occupy the Premises.

4. BASE LICENSE FEE.
In consideration of Licensor's granting to Licensee the right to use and occupy the Premises up through and including the License Termination Date, Licensee hereby agrees to pay to Licensor a daily license fee as set forth on Exhibit A attached hereto and made a part hereof (the "Base License Fee"). The Base License Fee shall be due and payable each day or night that Licensee performs at the VENUE.

5. COMPENSATION.
Licensee shall be entitled to retain all fees and gratuities paid by customers of the VENUE for performances of Licensee's services, subject to administrative fees (10%) charged by the VENUE in exchange for processing of credit cards, etc. However, the VENUE shall establish minimum fees (the "Performance Fees") for entertainers' performances to be paid by customers based on industry custom and in consultation with Licensees. The Licensor represents that the Performance Fees shall be competitive with fees charged by entertainers at competitor establishments. However, nothing shall prevent Licensee from receiving tips or other gratuities in excess of the Performance Fees. The Licensee specifically acknowledges that the Performance Fees attributable to personal dances (i.e., "lap dances") or performances in private or semi-private sections are a discretionary service to the customers and are compensated by tips or gratuities to the Licensee.

6. HOURS.
Licensor is to provide to Licensee the non-exclusive right, in common with other entertainers, to perform at the VENUE, during the VENUE's normal business hours, which business hours (11:00pm – 5:00am). Licensee shall have the right to perform at the VENUE during the hours of Licensee's Schedule and shall have the right to perform at the VENUE at all times only subject to availability.

ENT 





7. SERVICES.
In addition to use of the VENUE's premises, in exchange for the License Fee, Licensor shall provide the following services at the VENUE, at Licensor's expense:
Music (including ascap and bmi fees), Dressing room facilities, lockers, wait staff, food & beverage service; and advertisement of the VENUE (any advertisement specific to the Licensee shall be at Licensee's sole cost and expense and Licensor shall have no obligation to advertise for the Licensee).
Licensee agrees that the License Fee does not include fees for the DJ's at the VENUE, House Mom services, hair and make-up artists and/or any other ancillary services which shall be contracted for and paid directly by Licensee, at Licensee's sole cost and expense.

8. RELATIONSHIP
Licensor and Licensee each acknowledge and agree that the relationship of the parties hereto is that of licensor and licensee and is not an employee/employer relationship.
Nothing in this Agreement shall be construed so as to create an employee/employer relationship between the parties hereto.
Licensee shall be solely responsible for obtaining and maintaining, at Licensee's sole cost and expense, all necessary business licenses and permits and insurance including but not limited to, health, disability and workers compensation and for paying all federal, state and local taxes and contributions imposed upon any income earned by Licensee at the VENUE.
The VENUE and Licensee acknowledge and represent that if the relationship between them was that of employer and employee, the VENUE would be required to collect, and would retain, all Performance Fees paid by customers to Licensee – Licensee acknowledges and agrees that if the relationship were one of employer/employee, all Performance Fees would be the property of the VENUE.
THE PARTIES ACKNOWLEDGE AND REPRESENT THAT LICENSEE'S RIGHT TO OBTAIN AND KEEP PERFORMANCE FEES PURSUANT TO THIS LICENSE IS SPECIFICALLY CONTINGENT UPON THE BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF LICENSOR AND LICENSEE.
In order to comply with applicable tax laws and to assure that the VENUE is not unjustly harmed and that Licensee is not unjustly enriched, the VENUE and Licensee agree that if upon any ruling or decision of an arbitrator, court or other tribunal with jurisdiction over the matter that the relationship is one of employer/employee, Licensee shall surrender, reimburse and pay to the VENUE, all Performance Fees received by Licensee at any time she performed on the Premises - all of which would otherwise have been collected and kept by the VENUE had they not been retained by Licensee under the terms of this License - and shall immediately provide a full accounting to the VENUE of all tip income which she received during that time;
Any Performance Fees that Licensee fails to repay to the VENUE are deemed service charges to the customer and as such the VENUE shall be entitled to offset any wage obligations by any amount not returned by the Licensee.

9. RELEASE FROM LIABILITY.
Licensee agrees that Licensor shall not be responsible or liable for any damage or injury to any property or to any person or persons at any time on or about the Premises arising from any cause whatsoever except Licensor's willful misconduct. Licensee shall not hold Licensor in any way responsible or liable therefore and will indemnify and hold Licensor harmless from and against any and all claims, liabilities, penalties, damages, judgments and expenses (including, without limitation, reasonable attorneys' fees and disbursements) arising from injury to person or property of any nature arising out of Licensee's use or occupancy of the Premises and also for any other matter arising out of Licensee's use or occupancy of the Premises including damage or injury caused by Licensee.

10. NO ASSIGNMENT.
No assignment of this License shall be made by Licensee.

11. DEFAULT
In the event Licensee shall be in default of any obligation to pay money under this License or in the event Licensee shall be in default of any non-monetary provision of this License (including, but not limited to, violation of any Federal, state or local laws or regulations or any rules established by the VENUE regarding conduct on its premises), this License shall immediately terminate, and Licensor shall have the right, to the extent permitted by law, to (i) immediately withdraw the permission hereby granted to Licensee to use the Premises; and (ii) remove all persons and property there from, without being deemed to have committed any manner of trespass. Such remedies shall be in addition to any other rights or remedies Licensor may have hereunder or at law or equity.

12. CONFIDENTIALITY.





Licensor and Licensee acknowledge that each may come into contact with information in all forms regarding the other's business, clients and clients' businesses. All such information shall be deemed confidential information and shall not be used or communicated by the other at any time for any reason whatsoever.

13. NOTICES.
Any notices required or permitted to be given to either party under this License shall be given to the respective parties at the address written on the first page of this Agreement by hand, by reputable overnight courier (for next business day delivery) or by certified mail, return receipt requested. Such notices shall be deemed given upon a) delivery, in the case of hand delivery; b) one business day after mailing, in the case of overnight courier, and c) three business days after mailing, in the case of mailing.

14. LEGAL ACTION.
THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT GIVING EFFECT TO THE CONFLICTS OF LAWS PRINCIPLES THEREOF.

15. ARBITRATION.
The parties agree that any controversy, dispute or claim arising out of this Agreement or otherwise out of Entertainer performing at the Premises shall be exclusively decided by binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement will be governed and settled by an impartial independent appointed by the American Arbitration Association ("AAA"), in Harris County, Texas, and the determination of the arbitrator shall be final and binding (except to the extent there exist grounds for vacation of an award under applicable arbitration statutes). The parties agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to any proceedings commenced under this Section.
15. The arbitrator will have no authority to make any ruling, finding or award that does not conform to the terms and conditions of this Agreement. Each party shall bear its own costs in any arbitration. The arbitration provision contained herein shall be self-executing and shall remain in full force after expiration or termination of this Agreement. In the event any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party by default or otherwise, notwithstanding such failure to appear. The place of arbitration shall be the State of Texas, County of Harris. The arbitrator shall give effect insofar as possible to the desire of the parties hereto that the dispute or controversy be resolved in accordance with good commercial practice and the provisions of this Agreement. To the fullest extent permitted by law, the arbitrator shall apply the commercial arbitration rules of the American Arbitration Association and Title 9 of the U.S. Code, except to the extent that such rules conflict with the provisions of this Section 15 in which event the provisions of this Section 15 shall control.
THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL AT ARBITRATION. THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY. THE PARTIES SHALL HAVE THE RIGHT TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARING AND TO CROSS-EXAMINE WITNESSES, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW PURSUANT TO THE FAA. FOR ANY CLAIMS OF THE LICENSEE BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTORY PROTECTIONS, THE VENUE SHALL PAY ALL FEES CHARGED BY THE ARBITRATOR. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY OF ANY PART OF THIS LICENSE, AND ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION. LICENSEE UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT SHESPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION IN ANY FORUM AND IF AT ANY TIME LICENSEE IS DEEMED A MEMBER OF ANY CLASS CREATED BY ANY COURT IN ANY PROCEEDING, SHE WILL "OPT OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HER BEHALF LICENSEE SHALL WAIVE HER RIGHTS TO ANY SUCH MONETARY RECOVERY. ALL CLAIMS OR DISPUTES BETWEEN LICENSEE AND THE VENUE (AND ANY OTHER PERSONS OR ENTITIES ASSOCIATED WITH THE VENUE) SHALL BE ARBITRATED INDIVIDUALLY.

16.MISCELLANEOUS
This Agreement constitutes the entire understanding of the parties. No representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement. No prior oral or written statements, representations, promises and inducements have been made by either of the parties relating to the subject matter hereof which are not embodied in this Agreement. If any provision of this Agreement or the application thereof to any person or circumstance shall, for any reason and to the extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision

29



to the other person or circumstance shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law. Licensor's failure to insist on compliance or enforcement of any provision of this Agreement shall not affect the validity or enforceability of this Agreement or operate or be construed as a waiver of any future enforcement of that provision or any other provision of this Agreement. This Agreement represents the entire agreement of the parties with respect to the subject matter thereof and may not be modified or amended except in accordance with a writing signed by each of the parties hereto. Sections 8 through 15 shall survive the termination of this Agreement.

LICENSOR: AREA 29/SILVER RAIN LLC (the "VENUE" or "Licensor")
PREMISES ADDRESS: 9301 Bissonnet Street, Houston Texas, 77074 (the "Premises)

LICENSEE ACKNOWLEDGES THAT LICENSEE HAS READ AND REVIEWED THIS AGREEMENT INCLUDING THE ATTACHED TERMS AND CONDITIONS IN ITS ENTIRETY, THAT LICENSEE HAS BEEN GIVEN AN OPPORTUNITY TO ASK LICENSOR QUESTIONS ABOUT IT, AND THAT LICENSEE HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF HER CHOICE PRIOR TO ENTERING INTO THIS AGREEMENT. LICENSEE ACKNOWLEDGES THAT LICENSEE UNDERSTANDS THE TERM AND CONDITIONS OF THIS AGREEMENT AND KNOWINGLY AND FREELY AGREES TO ABIDE BY THEM.

This Agreement incorporates our terms of business set out on the attached Terms and Conditions which you confirm you have read and understood. We both agree to comply with the Terms and Conditions.

LICENSEE/ENTERTAINER
STAGE NAME: STALLION
PRINTED NAME: Chanyanna Whitney Gzenwa SIGNED: [signature] DATE: 07/29/22

LICENSE COMMENCEMENT DATE IS THE AFOREMENTIONED DATE ENTERED AND SIGNED BY LICENSEE

NOTE: Dancer Tipout is NOT mandatory but it is 100% Customary.

Suggested tipout to managers and staff:

Managers $20.00 each

DJ's $20.00 each

Sweepers $15

House Mom $10.00

IF any of the above mentioned staff members go above and beyond their duties to help you make money, PLEASE take care of them appropriately!

**WAIVER/CONSENT/NON DISCLOSURE**

WG 1. In consideration for being licensed to provide entertainment at Area 29, I hereby release, waive, discharge and covenant not to sue Area 29/Silver Rain LLC, their officers, agents, servants, contractors, patrons or employees (hereinafter referred to as releasees) from any and all liability, claims, demands, actions and causes of action whatsoever arising out of or related to any loss, damage, or injury, including death, that may be sustained by me, or any of the property belonging to me, whether caused by the negligence of the releasees, or otherwise, while in, on, away from, or upon the premises.

WG 2. I am fully aware of the risks involved and hazards connected with this industry, and I hereby elect to voluntarily work with full knowledge that said environment, though minimal, may be hazardous to me and my property. I voluntarily assume full responsibility for any risks of loss, property damage or personal injury, including death, that may be sustained by me, or any loss or damage to property owned by me, as a result of being *LICENSED*, whether caused by the negligence of releasees or otherwise. Additionally, I agree not to consume alcohol if I am under the age of 21.

WG 3. I further hereby agree to indemnify and hold harmless the releasees from any loss, liability, damage or costs, including court costs and attorney fees, that they may incur due to my *LICENSING*, whether caused by negligence of releasees or otherwise.

AREA29 "Stallion"



WF4. I understand that Area 29 does not maintain any insurance policy covering any circumstance arising from my participation in any event or any activity associated with or facilitating my *LICENSING*. As such, I am aware that I should review my personal insurance portfolio. It is my express intent that this Waiver of Liability and Hold Harmless Agreement shall bind the members of my family and spouse, if I am alive, and my heirs, assigns and personal representative, if I am deceased, and shall be deemed as a release, waiver, discharge and covenant not to sue the above-named releasees. I hereby further agree that this Waiver of Liability and Hold Harmless Agreement shall be construed in accordance with the laws of the State of Texas.

WF5. By agreeing to this release, I acknowledge and represent that I have read the foregoing Waiver of Liability, Terms & Policies, Licensing Agreement and Hold Harmless Agreement, understand it and sign it voluntarily as my own free act and deed; no oral representations, statements, or inducements, apart from the foregoing written agreement, have been made; I am at least eighteen (18) years of age and fully competent.

WF6. In consideration of my *LICENSING*, upon the terms herewith stated, I hereby give to Area 29 [Web Master/Web-Host] his/her heirs, legal representatives and assigns, those for whom the Web Master/Web-Host is acting, and those acting with his/her authority and permission the unrestricted right and permission to copyright and use, re-use, publish, and republish my photographic portraits, videos or pictures of me or in which I may be included intact or in part, composite or distorted in character of form, without restrictions as to changes or transformations in conjunction with my own or a fictitious name, or reproduction hereof in color or otherwise, made through any and all media no or hereafter known for illustration, art, promotion, advertising, trade, or any other purpose whatsoever. I also permit the use of any printed material in connection therewith. I hereby relinquish any right that I may have to examine or approve the completed product or products or the advertising copy or printed matter that may be used in conjunctions therewith of the use to which it may be applied. I hereby release, discharge and agree to save harmless [Web Master/Web-Host], his/her heirs, legal representatives or assigns, and all persons functioning under his/her permission or authority, or those for whom he/she is functioning, from any liability by virtue of any blurring, distortion, alteration, optical illusion, or use in composite form whether intentional or otherwise, that may occur or be produced in the taking of said picture of in any subsequent processing thereof, as well as any publication thereof, including without limitation any claims for libel or invasion of privacy.

WF7. The Licensee/entertainer expressively agrees not to make any remarks, give statements, and/or interviews which discuss the details of this agreement or any other dealings, events, incidents, public, private, or personal with any of the patrons, staff, management, other entertainers/licensees in this without prior written consent from the Licensor/Venue and the other party. The Licensee/entertainer expressively agrees not to post or release any details, photos, recordings, opinions, emotions, information or sentiments about the venue, events, incidents, public, private, or personal with any of the patrons, staff, management, other entertainers/licensees in this agreement, directly or indirectly via the Internet, social media, print, or any other media. To do so would be a material breach of this agreement.

I execute this release by agreeing on the application for full, adequate and complete consideration fully intending for it to be binding.

SIGNATURE [signature] DATE 07/27/22

NAME Whitney Freeman DOB 06/01/2000

STAGE NAME STALLION

SOCIAL MEDIA Whitney-eze

ADDRESS 10510 W Aliana Fair CITY Richmond

STATE Texas ZIP 77407 PHONE 832-670-8759